STERN v. MAXWELL et al.

No. 4077.

Court of Civil Appeals of Texas. Texarkana.

Nov. 4, 1931.

Rehearing Denied Nov. 19, 1931.

R. G. Storey and Knox W. Sherrill, both of Dallas, and Chas. L. Harty, of Overton, for appellant.

Pollard, Beauchamp, Lawrence, Lux & Davenport, of Tyler, for appellees.

LEVY, J. (after stating the case as above).

The points presented by the appellee's motion are that (1) jurisdiction of the appeal does not attach because the appeal bond was not filed within the statutory period of time; and (2) the appeal bond is in a sum payable for cost less than the statutory amount, and does not state the date of the judgment. In respect to the first point, the facts appear without dispute and conceded to be that the judge of the district court by consent of all the parties tried the present suit without a jury and entered final judgment on the merits on March 21, 1931. The real difference and the question in issue is that of whether or not the trial of the case should be treated, in point of fact and in legal effect, as a trial by consent of all the parties "in vacation." If the trial should be regarded as tried by consent of the parties "in vacation," as the statute (article 1915, Vernon's Ann. Civ. St.) expressly authorizes, then the appeal bond was filed too late, and not within the statutory period of twenty days. Article 2253 (Acts 40th Leg. [1927], c. 15). As the record appears in this court, the only evidence bearing upon or having relation to the point is that appearing in the face of the judgment. In the judgment appears the recital that "upon agreement of the parties" the cause was finally tried upon its merits "at a time when the court had extended its term." In view of this recital, it must be taken in point of fact that the cause was tried by consent of the parties at the extended term of the court, an extension of the regular term by order of the court appearing of record. It is not of legal consequence that the "extended term" was not "a special term" distinctly called as such, for that would not operate and have the effect to deprive the court of jurisdiction. The court would be empowered to act and finally try and make adjudication upon the case at the extended term as much as at a regular or special term, in virtue of the agreement and voluntary appearance of all the parties. That would be so notwithstanding such case was not strictly in the terms of the court's order "pending litigation" for compulsory trial at the extended term of the court. Browder v. Memphis Independent School District, 107 Tex. 535, 180 S. W. 1077. That case is decisive and of controlling influence upon the question here. Since, as believed, "the extended term," which was duly and timely ordered of record, would, within the terms of article 2253 (Acts 40th Leg., c. 15), constitute "the term of the court at which the final judgment in the cause is rendered," the appeal bond must be considered as filed within the time required, which is "within twenty days after the expiration of the term." This extended or special term was finally adjourned on March 28, 1931, and did not actually last eight weeks. As it appears on appeal, the "extended term," as termed by the record, was not intended to be in the nature of a mere prolongation of the regular term of court to bring a "pending trial" to a conclusion (article 1923), but was intended in the nature of an additional or special term, for the order provides generally that it shall be "for the purpose of disposing of pending litigation of every kind and character before the court." As intended by the statute, such character of order was to operate as an additional or special term. Section 6, Acts 1927, p. 230 (Vernon's Ann. Civ. St. art. 200a, § 6); article 1920. And in the view of being an additional or special term, it is believed that such special term cannot be considered as a term which "may by law continue more than eight weeks," for such special term is not limited by law to any number of weeks, and its duration is left entirely to the judge of the court as the exigencies of the particular circumstances may require. It may or may not actually last eight weeks or more.

The second point comes within the statute which authorizes the amending of an appeal bond defective in form. Acts 1931, c. 187, p. 315 (Vernon's Ann. Civ. St. art. 1840—

A). The appellant's request to have the bond conform to the statute is granted, and, upon the condition that it be done within ten days from October 10, 1931, the motion to dismiss will be overruled.

### On the Merits.

### Statement.

The suit was filed by appellant on February 17, 1931, to establish and quiet his right in a lease on 23.5 acres of land granting the right to prospect and bore wells for gas and oil. It was alleged that the appellees were asserting a claim of title in the premises inconsistent with the rights of plaintiff and in violation of the lease. An injunction was sought to restrain the appellee from doing acts prejudicial to the alleged rights of appellant.

The appellees, who are the owners of the leased land, answered by general denial, and specially pleaded, in effect, the termination of the lease under express provisions therefor by reason of failure to timely pay the stipulated rentals as the privilege of deferring the commencement of drilling a well. The case was tried before the court without a jury, and, in keeping with his findings of fact, judgment was entered in favor of the appellees and in denial of any recovery by the appellant.

The following facts appear without dispute: On March 24, 1927, B. F. Maxwell and wife, owners of the land, executed and duly acknowledged a lease to C. M. Joiner, trustee, on 146 acres of land, granting the right to prospect and bore wells for gas and oil with a specified interest in the oil and gas produced. The lease provided, as far as material to set out, viz.:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them is produced from said land by the lessee. * * * If no well be commenced on said land on or before the 3rd day of February, 1928, this lease shall terminate as to both parties, unless the lessee on or before the date shall pay or tender to the lessor or to the lessors credit in the First State Bank of Overton, Texas, or its successors, which shall continue as the depository regardless of changes in ownership of said land, the sum of Seventy and 50/100 Dollars, which shall operate as a rental and cover the privileges of deferring the commencement of a well for six months from said date. In like manner and upon like payments, or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively, and it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable, as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the Lessee, on or before the expiration of said twelve months, shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals as above provided that the last preceding paragraph hereof governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

"Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if Lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production continues. * * *

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignments, or rentals, or royalties, shall be binding on the Lessee until after the Lessee shall be furnished with a written transfer, or assignment, or a true copy thereof, and it is hereby agreed that in the event this lease shall be assigned as to a part, or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of its proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said Lessee or any assignee thereof shall make due payment of said rental."

The lease was duly filed for record in Rusk county on April 15, 1927. The lease was entered or spread at large upon the Deed Record, volume 132, page 193, in words and figures, except in one line the word "six" was omitted and not inserted, and a blank space appeared. Such defective record is thus shown by the quotation following: "The sum of Seventy and 50/100 Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for ——— months from said date." Thereafter, on February 3, 1930, C. M. Joiner, trustee, executed and acknowledged a written as-

signment to appellant, D. M. Stern, in the lease and lease rights in so far only and to the extent of a "one-sixth undivided interest in the 141 acres above described." This assignment was duly recorded on September 13, 1930. D. M. Stern then, in a suit for partition, by decree of the court, had his interest in the leased premises set aside to him in the specified acreage of 23.5 acres.

There was due and unpaid rentals on the 23.5 acres of $11.75 for the six months beginning February 3, 1931. By letter of February 4, 1931, and on that date received by the bank, the appellee B. F. Maxwell instructed the First State Bank of Overton "to decline to receive any rentals after that date" on the lease. The appellant signed a check and mailed it to the bank reading: "Dallas, Texas, Febr. 3, 1931. Pay to the order of First State Bank of Overton, Texas, $11.75. Eleven and 75/100 Dollars. To Republic National Bank & Trust Company, Dallas, Texas. Rental Maxwell lease." This check "was received by the bank (at Overton) on the 6th day of February, 1931."

The controversy between the parties and the conflict of evidence was respecting the tender of the rental payable under the terms of the lease. The appellant claimed that he did not have actual notice of the due date of the rental, and that he could not determine it from the provisions in the lease as it was recorded. His testimony, as material to set out, follows: "It was sometime in 1930 when I first acquired, by assignment, an interest in the oil and gas lease executed by B. F. Maxwell and wife to C. M. Joiner, Trustee. It was in the middle of January, 1931, when I first discussed with Mr. and Mrs. Maxwell the matter of the rental payments on that land. I sold an interest in this lease to have a well drilled on it and it was necessary to accomplish this to secure a receipt for the rentals which I did not have at that time. I saw Mr. and Mrs. Maxwell and asked them about it. They told me there was a misunderstanding about the date of the rental and therefore they could not give me an affidavit in regard to previous rentals having been paid. I then offered them a check in payment for the rental of 1931 and I thought maybe that (check) would serve as a receipt, but they would not accept the check because, as they said, there was a dispute as to the rental date. Mr. Langley of Dallas happened to be with me on that occasion. I was sincerely and diligently seeking to find out when the rentals were payable and how much had been paid. I did not have any other reason in going to them than a desire for accurate information as to when the rentals were due. I did not make any effort to give Mr. Maxwell a check when he would not accept it. The only time I offered to give any one a check was when I was in front of the store there and I offered the check to Mrs. Maxwell. I did not write the check out there but I went home (Dallas) and sent the check to the bank (at Overton). I knew that the lease instrument said that the bank at Overton was the depository. I never saw the original instrument (meaning the lease) but I looked at the copy of it on the record. I did not make any attempt to find the original instrument which shows to have been in the Clerk's office, because I did not think it was necessary. I never did make any attempt to see the original lease because I thought the recorded instrument was a complete copy of the original, that is what we usually go by. After I went home and wrote the check out I sent it to the First State Bank at Overton which is the depository named in the lease. I did not make any effort to get the money to them between the time I talked to Mrs. Maxwell and the time I sent my check to the bank. I made no effort in that time to again present to them, or make available to them, the money due under the rental."

Mr. R. C. Langley, who was with appellant at the time, testified, in substance, that appellant offered to give the appellee a check for the rental, but that he did not "do anything more than offer to give it to them." He further stated that appellant told the appellees that this rental was due March 24th and "Now, I'll give you a check right now," but that "I do not know that there was any answer made to that."

Appellee B. F. Maxwell stated: "I remember Mr. Stern coming by to talk to me in reference to a lease by assignment for Mr. Joiner. I do not remember what date it was, but it was sometime in January. I was at the store at the time Mr. Stern came. Eddie Walker and my wife were present there. Another man was with Mr. Stern and out in the car. I was about nine feet from the car. Mr. Stern said something about when the rental payments were due and we told him our abstract was being brought up and was on record. He did not make any payment to me of the rentals nor has he ever paid any rentals to me other than the one he sent to the bank shown by the evidence here. He did not offer me any money or any other payment of rental at my store at that time. He said he could give us a check but he had to the 24th of March and was not in any hurry. That was the only time he and I have ever talked, or that he has talked in my presence to my wife, with reference to the matter of rental payments. I remember that Mr. Stern brought an affidavit along with him. I could not have sworn that the rental payments were due at that time without I had my abstract to look at. I know somewhere close to the date that Mr. Joiner had previously paid the rentals to me, but I could not tell the exact dates without seeing the abstract. On that occasion I told Mr. Stern that he

could find the abstract in Mr. Arnold's office or that he could go to the records and find out what he wanted to know. I did not want to make any statement to him about it and then find out that I was wrong so I told him to go to the records. I did not tell him to rely on what was on the record. I do not know that it is true that Mr. Stern did not at that time know when the rental was due. He came with a check and he said he did not know; right in front of my wife. Mr. Stern did not say that the rental was due on March 23rd, he made the remark when he said he had a certified check that he had plenty of time to pay in. If Mr. Stern had brought me the money I would not have refused it."

Mrs. Maxwell and Eddie Walker testified, substantially, that the appellant, when he came down there where they were, made inquiry as to the payment of the rentals, and that he was referred to Mr. Arnold's office and the county clerk's office for the information, and that appellant stated at the time that he could give a check for the amount of the rental payable, but that he did not offer to give the check nor to pay any sum of money.

The findings of fact made by the trial court are:

"That the lease under which plaintiff claimed provided that the Lessee (plaintiff in this cause) should pay to Lessor, or tender to the credit of Lessor in the First State Bank of Overton, Texas, the rental payment specified in such instrument on or before the 3rd day of August, 1927, unless a well should be commenced on said land on or before such date, and that payment of such amount should operate as a rental and cover the privilege of deferring commencement of drilling operation for a period of six months from said date, and that in like manner and upon like payments each six months thereafter the commencement of drilling operations might be further deferred for successive periods of six months each, during the primary term for which said lease was executed, to-wit, five years.

"That D. M. Stern, Plaintiff, did not pay, or cause to be paid, to the defendants in person or to the credit of the defendants in the First State Bank of Overton, Texas, the rental payment called for by the lease under which said plaintiff is claiming in said cause until February 5, 1931, subsequent to February 3, 1931, the date specified by said instrument that rentals should be paid.

"That D. M. Stern made no legal tender of such rental payment to the defendants B. F. Maxwell and wife, Mary Maxwell, or to the First State Bank of Overton, Texas, depository under the terms of said contract under which plaintiff claims."

The conclusion reached by the court was that plaintiff D. M. Stern was not entitled to recover in his suit, and that B. F. Maxwell and wife should go hence without day and have the title and possession to the premises in suit.

### Opinion.

There is presented for determination under the assignments of errors the points in view, in effect, that (1) the evidence established that the appellant timely made a tender of the rental payable under the terms of the lease before and on the contractual period of February 3, 1931; (2) the original lease being defectively transcribed, notice was not imparted of the time fixed by the contract to pay the rental, and appellant used all reasonable diligence to ascertain the due date; (3) the appellees are precluded or estopped from denying to the appellant the right of a reasonable extension of the time to pay the rental beyond the contractual time, because of their acts and declarations and in declining to give any information as to the correct date the rental was payable.

The trial court made the affirmative finding of fact that appellant did not pay or cause to be paid or make legal tender within the contractual period of time of the acreage rental payable semiannually. This finding must be, as a matter of pure fact, accepted by this court, because warranted by the evidence. Taking the appellant's own testimony, in January he only offered to give appellee a check in payment of the rental. The check appellant signed on February 3, 1931, and mailed to the First State Bank of Overton, was not, according to the undisputed evidence, received by the bank until "on the 6th day of February, 1931." The contractual period of time for payment of the semiannual acreage rental was, as is obvious, on or before February 3, 1931. And, looking to the circumstances proven, the acts in themselves were insufficient to make, as a matter of pure law, a complete tender. According to appellant's testimony: "I then offered them a check in payment for the rental of 1931, and I thought maybe that (check) would serve as a receipt, but they (appellees) would not accept the check because, as they said, there was a dispute as to the rental date. I did not write the check out there, but I went home and sent the check to the bank (at Overton). I did not make any effort to get the money to them between the time I talked to Mrs. Maxwell and the time I sent my check to the bank. I made no effort in that time to again present to them or make available to them the money due under the rental." Appellee testified: "He (appellant) did not make any payment to me of the rental nor has he ever paid any rental to me other than the one he sent to the bank. He did not offer me any money or any other payment of rental at my store at that time (January). He said he could give us a

check but he had to March 24th and was not in any hurry. If Mr. Stern had brought me the money I would not have refused it." To constitute a valid tender, the money must be present, ready, produced, and offered to the person who is entitled to receive it. 26 R. C. L. § 5, p. 626. A mere offer to pay by check or to draw a check lacks the requisites and sufficiency of a valid tender. 38 Cyc. § 4, p. 143. The appellee did not make a proper tender useless or impossible through his fault, for he affirmatively said that, "If Mr. Stern had brought me the money, I would not have refused it." And the payment through check to the First State Bank of Overton was not, as plainly appears, on the day fixed by the lease. It was required of the appellant to make a tender of the payment on the day fixed for the payment, and not thereafter. 38 Cyc. p. 147, and many cases. As may be seen from the original lease executed by appellant to O. M. Joiner, trustee, it was provided that the lease should be void unless drilling operations commenced on the land "on or before the 3rd day of February, 1928," or, in lieu thereof, the payment of the fixed amount of $70.50. And by further express provisions the lease would not be void, but would run for six months in case acreage rental was paid semiannually by the lessee. In such case it is apparent that the lessee or his assigns would be bound to proceed with the drilling operations or pay the acreage rental semiannually within the contractual period of time in order to full performance of his contractual obligations, and to avoid the termination of the lease by its own terms.

The second point presented involves the question of whether or not the appellant was entitled to pay the semiannual acreage rental on February 6, 1931, although that date was beyond the contractual period of time for the payment. The appellant's check for the amount of the rental was received by the bank on February 6, 1931. It will be observed that the appellant's leasehold estate is by virtue of an assignment by the original lessee who held under the owner of the land. The lessee had the right to alienate his interest by assigning the lease in part. By such assignment the appellant took the lease, in legal force and effect, subject to the conditions contained therein, and became bound to the original lessor by the same duties and obligations and entitled to the same rights as his assignor. Because of privity of estate, the law imposes a duty upon him as assignee to perform and he becomes liable upon covenants maturing while he holds and enjoys the lease term. In conformity to the foregoing principles, the appellant was not entitled to predicate relief against his contractual personal obligation of assumption to pay acreage rental at the fixed time merely upon the fact the original lease was defectively transcribed in so far as it omitted the number (six) of months from February 3, 1928, which the payment of the acreage rental would defer the commencement of the required drilling operations on the land. The point in issue here cannot be rested upon and be determined alone by the doctrine of registry notice. It may be conceded that the duty of careful inquiry into and of investigating the title is imposed upon the vendee by law, and that the record imports, in applicable matters, notice only of what it contains. Taylor v. Harrison, 47 Tex. 454, 26 Am. Rep. 304. Yet the doctrine of registry notice does not reach to the extent of enabling a person to claim ignorance of facts and protection of an innocent purchaser relating to his purchase, such as covenants of the assignee of a lease to pay taxes, for rent, or semiannual acreage rentals. It is a quite settled principle that the assignee of a lease conveyed by assignment is liable for the rental, and of this, as a matter of pure law, he could not be ignorant. Le Gierse & Co. v. Green, 61 Tex. 128; Harvey v. McGrew, 44 Tex. 413. The error of the record, therefore, would be of importance only in case, in the light of the other circumstances, such error was influential in causing appellant to fail to pay the acreage rental at the contractual time. As an equitable ground for relief, it will be considered in the light of the facts and circumstances. In order to that relief in equity, to avoid consequences of failure of payment of money strictly in point of time, it seems imperative that the circumstances must exclude the idea that neglect or carelessness prevented a compliance or that it has been occasioned by the fault of the other party. It was, we think, a question of pure fact of whether or not appellant was without actual notice, through diligent inquiry, and had to rely solely upon constructive notice through contents of the record. The trial court did not make nor was he requested to make an affirmative finding in the respect mentioned; yet he inferentially did, we think, in the light of the judgment rendered and the other findings made. The appellant took over his lease by assignment on February 3, 1930, exactly a year before the acreage rental now in issue was payable. As his evidence discloses, it was not until the middle of January, 1931, that he attempted to find out from appellee or any one else the due date of the payment due on February 3, 1931. And while the appellees upon inquiry referred appellant to the record to show the due date, yet the evidence does not tend to show that the appellees knew of the error in transcribing in the original lease. There is an absence of any evidence that appellant ever inquired of his assignor, presumably in possession of the recorded original lease, of the due date. And there is affirmative evidence that the lessee holding the three-fourths interest in the 141 acres other than appellant's lease promptly

paid the semiannual acreage rental "on or about the first of February," 1931. Appellant's testimony that he used due diligence could not be conclusive; he being a party to the suit. Coleman v. Buttram (Tex. Civ. App.) 40 S.W.(2d) 977.

It is believed that estoppel as claimed in the third point may not be predicated upon the acts of appellees. It does not appear that they were guilty of any fraud or deception or in any wise negligently or intentionally misled the appellant to his injury as to the due date of the acreage rental payable on February 3, 1931. Neither do the pleadings charge the appellees with misconduct, fraud, or deception in the matter.

We have considered all the assignments of error, and think they should be overruled.

The judgment is affirmed.